UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THOMAS ADAMS,

                                 Plaintiff,

      - against -                          **OPINION & ORDER**

TOWN OF CLARKSTOWN POLICE           No. 21-CV-11062 (CS)
DEPARTMENT, JOHN DOE Police Officers 1-99,
JANE DOE Police Officers 1-99, and LORI
ADAMS,

                               Defendants.
------------------------------------------------------------x

<u>Appearances</u>:

Matthew H. Herlihy
Scale LLP
Croton-on-Hudson, New York
*Counsel for Plaintiff*

Michael H. Sussman
Sussman & Associates
Goshen, New York
*Counsel for Defendant Lori Adams*

Lalit K. Loomba
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
White Plains, New York
*Counsel for Defendant Town of Clarkstown*

<u>Seibel, J.</u>

       Before the Court are the motions to dismiss of Defendant Lori Adams, (ECF No. 31), and

Defendant Town of Clarkstown, (ECF No. 37).  For the following reasons, both motions are

GRANTED.

I.      **BACKGROUND**

     A.    **Facts**

1

The following factual allegations are taken from the Amended Complaint, (ECF No. 30 ("AC")), and documents attached to the AC or incorporated in it by reference.  For the purposes of Defendants' motions, I assume that the factual allegations, but not the conclusions, in the AC are true.

On or about May 26, 2020, Plaintiff Thomas Adams called Defendant Lori Adams ("Lori") to discuss her allegedly unexpected decision to seek full custody of their child as part of their divorce.  (AC ¶ 13.)  During the call, the parties became upset with one another, and Plaintiff used "colorful language" toward Lori.  (*Id.*)

After the call, Lori called her divorce attorney, who directed her to file a police report. (*Id.* ¶ 15.)  Lori then packed up her belongings and drove to her mother's house.  (*Id.*)  From there she went to the Town of Clarkstown Police Department ("Clarkstown P.D.") and filed a complaint against Plaintiff.  (*Id.*)  In her statement, Lori wrote:

> At 5:12pm my husband Thomas R. Adams called me regarding a custody agreement pending our divorce screaming he called me a "cunt," he told me he was going to destroy me, coming after me guns blazing if he should lo[]se the right to see his son.  No such documentation was placed.  He said he would hunt me down should the things my attorney said were true.  I called my attorney and explained the call.  She advised me to come in being he's a police officer.

(ECF No. 30-2.)  Plaintiff denies making any type of threat against Lori during the conversation. (AC ¶ 14.)

Plaintiff was then contacted by a Clarkstown P.D. police officer ("PO # 1"), who advised him that they were preparing a domestic incident report.  (*Id.* ¶ 16.)  PO #1 directed Plaintiff to contact his employer, the New York Police Department ("NYPD"), and surrender his weapon, and asked him whether he made the statements recounted by Lori, which he "flatly denied." (*Id.*)  PO #1 called Plaintiff once more later that day, informing him that he would receive a criminal summons as a result of the phone call with Lori.  (*Id.* ¶ 17.)

On May 26, 2020, Lori stated the following, under penalty of perjury, on a misdemeanor information form:

> The deponent states the deponent did receive a phone call from a number she recognizes to be that of her soon to be ex-husband defendant, Thomas Adams, at 17:15 on this date. The deponent states she recognized the voice of the caller to be that of defendant, Thomas Adams, and that the defendant did communicate, by telephone, a threat to cause physical harm to the deponent. The deponent states the call lasted approximately 4 minutes during which the defendant verbalized, "I[']m coming at you guns blazing. . . I will hunt you down." The deponent states the defendant[']s statements did make her fear for her physical safety.

(ECF No. 30-1.)

On July 14, 2020, Plaintiff surrendered himself at the Clarkstown P.D., where he was arrested and charged with aggravated harassment in the second degree, (AC ¶ 18; *see* ECF No. 30-3), which is committed when, "[w]ith intent to harass another person," a person:

> communicates, anonymously or otherwise, by telephone, by computer or any other electronic means, or by mail, or by transmitting or delivering any other form of communication, a threat to cause physical harm to, or unlawful harm to the property of, such person, or a member of such person's same family or household . . . , and the actor knows or reasonably should know that such communication will cause such person to reasonably fear harm to such person's physical safety or property, or to the physical safety or property of a member of such person's same family or household.

N.Y. Penal Law § 240.30(1)(a). Plaintiff alleges that two additional Clarkstown P.D. officers ("PO #2" and "PO #3") told him while they were processing him that they did not believe Lori's allegations. (AC ¶ 21.) Plaintiff alleges that the two officers stated "in sum and substance: 'Nobody believes Lori . . . This case is complete nonsense . . . Nobody believes this actually ever happened . . . Everyone knows that Lori is liar . . . Lori is full of shit.'" (*Id.*) On the same day, Plaintiff alleges, a supervisory officer ("SPO #1") contacted Plaintiff's squad commander at the NYPD and told him "in sum and substance: 'I don't believe what Lori is saying . . . Other officers agree with me in that they don't believe anything Lori has said or that this even ever happened." (*Id.* ¶ 22.)

3

On June 2, 2020, after an evidentiary hearing at which Plaintiff and Lori both testified, Rockland County Supreme Court Justice Robert M. Berliner granted Lori a temporary order of protection. (ECF No. 33-1.) The Court stated: "The Court finds that defendant did commit a family offense on May 26, 2020, when he made those threats. I'm finding that he did make those threats to [Lori]. It constitutes aggravated harassment." (ECF No. 33-1 at 82:7-11.)

On June 3, 2021, after numerous appearances in the Town of Clarkstown Justice Court, Plaintiff was acquitted at his criminal trial before Justice Howard Gerber. (AC ¶ 24.) Plaintiff alleges that during the trial, a police officer ("PO #4") approached him and his counsel, stating, "in sum and substance: 'How is this case still going? I can't believe this was ever even an arrest . . . This never should have been a case to begin with . . . Have you watched [Lori] testify? She is completely full of shit. What a liar.'" (*Id.* ¶ 25.)

### B.   <u>Procedural History</u>

On December 14, 2021, Plaintiff brought this action in the Supreme Court of the State of New York, Rockland County, against the County of Rockland, the Rockland County District Attorney's Office, the Clarkstown P.D., John Doe Police Officers 1 through 99, Jane Doe Police Officers 1 through 99, Lori, and Lori's lawyer, Marcia Kusnetz.[1] (ECF No. 1-1.) On December 26, 2021, the County of Rockland and the Rockland County District Attorney's Office removed the action to this Court. (ECF No. 1.)

On January 20, 2022, Plaintiff voluntarily dismissed the County of Rockland and the Rockland County District Attorney's Office, (ECF No. 18), and on January 26, 2022, Plaintiff voluntarily dismissed Kusnetz, (ECF No. 29).

---

[1] Plaintiff erroneously spelled her name "Kuznetz" rather than "Kusnetz" in the Complaint. (*See* ECF Nos. 1-1, 29.)

At a pre-motion conference the next day, I gave Plaintiff permission to amend his complaint, (Minute Entry dated Jan. 27, 2022), and he filed the AC on February 7, 2022. Plaintiff brings three claims for malicious prosecution under 42 U.S.C. § 1983 against the Clarkstown P.D. and John/Jane Doe officers, (*id.* at 6-10), and one claim of abuse of process under § 1983 against Lori, (*id.* at 10-11). Plaintiff seeks compensatory and punitive damages arising from the alleged constitutional violations. (*Id.* at 11.) Because the Clarkstown P.D. may not be sued as it is a subdivision of the Town of Clarkstown (the "Town"), *see Schisler v. Utica Police Dep't*, No. 16-CV-1051, 2016 WL 11265987, at *2 (N.D.N.Y. Sept. 9, 2016) ("[A] municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located."), Defendants have correctly interpreted the AC as bringing the malicious prosecution claims against the Town.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

#### 1.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

"A federal court has subject matter jurisdiction over a cause of action only when it 'has authority to adjudicate the cause' pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007)), *rev'd en banc on other grounds*, 585 F.3d 559 (2d Cir. 2009). "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Id.*[2] "When jurisdiction is challenged, the

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination." *Id.* "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 561 U.S. 247 (2010). When a defendant moves to dismiss both for lack of subject matter jurisdiction and on other grounds such as failure to state a claim upon which relief can be granted, the Court must address the issue of subject matter jurisdiction first. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

### 2.      Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* In deciding a motion to dismiss under Rule 12(b)(6), a court reviews the complaint "liberally, accepting all factual allegations as true, and drawing all reasonable inferences in the plaintiff's favor." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).[3]

### B.   **Documents Properly Considered**

#### 1.   **Legal Standard**

When deciding a motion to dismiss under Rule 12(b)(6):

> a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint. For a document to be considered integral to the complaint, the plaintiff must rely on the terms and effect of a document in drafting the complaint; mere notice or possession is not enough. And even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document,

---

[3] Plaintiff cites to the outdated no-set-of-facts pleading standard. (ECF No. 41 ("P's Opp. to Town") at 3.) That standard was "retired" by the Supreme Court in 2007 in *Twombly*, 550 U.S. at 562-63, and the applicable standard is now one of plausibility, *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. No lawyer should be citing the no-set-of-facts standard well over a decade after it was rendered obsolete.

and it must be clear that there exist no material disputed issues of fact regarding the
relevance of the document.

*United States of America ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021), *cert.*
*denied*, 212 L. Ed. 2d 764 (U.S. May 2, 2022) (No. 21-1314).  "To be incorporated by reference,
the complaint must make a clear, definite and substantial reference to the documents."  *DeLuca*
*v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010).  "A document is integral to the
complaint where the complaint relies heavily upon its terms and effect.  Merely mentioning a
document in the complaint will not satisfy this standard; indeed, even offering limited quotations
from the document is not enough."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).
"Even if a document meets the twin requirements of integrality – reliance and notice – a court
still may not consider it on a motion to dismiss if there is a dispute regarding the authenticity or
accuracy of the document or the relevance of the document to the dispute."  *DeLuca*, 695 F.
Supp. 2d at 60.  A court may also consider matters "of which judicial notice may be taken under
Fed. R. Evid. 201."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).  When a
court takes judicial notice of a document on a motion to dismiss, it should generally do so only
"to determine what statements the documents contain . . . not for the truth of the matters
asserted."  *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011).

　　　In contrast, on a motion to dismiss pursuant to Rule 12(b)(1), "the Court may look to
affidavits and other evidence outside the pleadings to resolve disputed jurisdictional fact issues."
*E. Paralyzed Veterans Ass'n v. Lazarus-Burman Assocs.*, 133 F. Supp. 2d 203, 208 (E.D.N.Y.
2001).  A district court may not, however, "'rely on conclusory or hearsay statements contained
in'" the documents outside the pleadings. *TZ Manor, LLC v. Daines*, 815 F. Supp. 2d 726, 734
(S.D.N.Y. 2011) (quoting *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir.
2004)), *aff'd*, 503 F. App'x 82 (2d Cir. 2012).

### 2.      Documents Submitted by the Parties

Defendants have submitted several documents in connection with their motions, including the AC, (ECF No. 33-6; ECF No. 38-1); the transcript of the June 2, 2020 evidentiary hearing before Judge Berliner, (ECF No. 33-1); extensions of the temporary order of protection entered by the Family Court, (ECF No. 33-2; ECF No. 33-3); Lori's January 18, 2022 pre-motion letter in anticipation of her motion to dismiss, (ECF No. 33-4); and Kusnetz's January 22, 2022 pre-motion letter in anticipation of her motion to dismiss, (ECF No. 33-5).

I may obviously consider the AC, *Condit v. Dunne*, 317 F. Supp. 2d 344, 357 (S.D.N.Y. 2004), and will take judicial notice of the documents filed in state court "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer*, 937 F.2d at 774.  But the pre-motion letters, in which Lori and Kusnetz lay out their anticipated arguments on a motion to dismiss, are outside the scope of the pleadings and are not relevant to either the 12(b)(6) motion or the 12(b)(1) motion, so I have not considered them on those motions, although I have considered them in connection with Lori's application for attorney fees.

### III.    <u>DISCUSSION</u>

#### A.      <u>Abuse of Process</u>

Plaintiff alleges an abuse of process claim against Lori for initiating the criminal action against him in state court.  Plaintiff alleges that she issued her complaint against him with the collateral objective of "formulat[ing] the basis for her to petition the court, in the underlying divorce and custody proceeding, to obtain a temporary order of protection," (AC ¶ 68), and "to leverage her position and accomplish her ultimate goals in the . . . divorce and custody proceeding, (*id.* ¶ 69).

As an initial matter, Lori argues that Plaintiff is barred from bringing an abuse of process claim against her by the *Rooker-Feldman* doctrine and the doctrine of collateral estoppel. (ECF No. 32 ("L.A. Mem.") at 3-7.) "[A] challenge to the court's subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine is properly considered under Rule 12(b)(1)", while "motions to dismiss invoking res judicata and collateral estoppel are properly brought under Rule 12(b)(6)." *Kern v. Joyce*, No. 19-CV-1106, 2020 WL 4340275, at *2 (W.D.N.Y. Apr. 20, 2020), *report and recommendation adopted*, 2020 WL 4338886 (W.D.N.Y. July 28, 2020), *aff'd*, 857 F. App'x 691 (2d Cir. 2021).

> Pursuant to the *Rooker-Feldman* doctrine, federal district courts may not exercise subject matter jurisdiction over actions that seek appellate review of state court judgments. The doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court is the only federal court that has jurisdiction to review state court judgments unless otherwise provided by Congress. This comity principle seeks to prevent state and federal courts from fighting each other for control of a particular case.

> The Second Circuit has established four requirements for applying the *Rooker-Feldman* doctrine: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by the state court judgment; (3) the plaintiff must invite the district court to review and reject that judgment; and (4) the state court must have rendered judgment before federal district court proceedings commenced.

*Done v. Wells Fargo Bank, N.A.*, No. 08-CV-3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009).

Lori argues that the *Rooker-Feldman* doctrine bars the abuse of process claim because Plaintiff is effectively seeking review and rejection of Judge Berliner's temporary order of protection. (L.A. Mem. at 6-7.) But the doctrine only applies when the later lawsuit complains of injuries caused by the earlier judgment. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005) ("[F]ederal plaintiffs are not subject to the *Rooker-Feldman* bar unless they *complain of an injury* caused by a state judgment") (emphasis in original). Plaintiff here does

not seek damages for the entry of the temporary order of protection; he seeks damages based on the criminal charges against him.  *See McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005), for the proposition that *Rooker-Feldman* doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court," because "[i]f a federal plaintiff present[s] some independent claim[, i.e., a claim based on an injury that was not *caused by* the state-court judgment,] albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion") (alterations and emphasis in original).  Nor is Plaintiff requesting this Court to "remedy [his] alleged injury caused by a state court judgment [by] overturning or modifying that state court judgment."  *McNamara v. Kaye*, 360 F. App'x 177, 177 (2d Cir. 2009).  Here, the relief Plaintiff is requesting – compensatory and punitive damages for the deprivation of liberty caused by Lori's complaint to the police, (AC at 11) – does not require this Court to overturn or modify the temporary order of protection.

Accordingly, I find that the *Rooker-Feldman* doctrine does not bar Plaintiff from asserting the abuse of process claim against Lori.

Lori further argues that Plaintiff's claim against her is barred by collateral estoppel. While I tend to agree that Plaintiff is precluded from relitigating the issue decided against him by Judge Berliner – in other words, he cannot deny that he made the threats during the call – and while I would be hard pressed to conclude that any citizen acts "without justification" in

reporting to the police and initiating a prosecution of a crime that was in fact committed,[4] I need not reach these issues because the claim against Lori fails for a simpler reason.

Plaintiff brings the abuse of process claim "under 42 USC §§ 1983 and 1988, 28 USC § 1331, the United States Constitution, and the Fourth and Fourteenth Amendments set forth therein."  (AC ¶ 71.)  "To state a claim under § 1983, a plaintiff must allege two elements:  (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015).  "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action."  *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012).  Thus, as the plain language of the statute indicates, § 1983 liability may be imposed only upon wrongdoers "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it."  *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988); *see Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."); *Hooda v. Brookhaven Nat'l Lab'y*, 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (Section 1983 "constrains only state conduct, not the acts of private persons or entities").

---

[4] The elements of a claim for malicious abuse of process under § 1983 are derived from state law, *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994), and one of them is that the defendant acts "without excuse or justification," *id.* ("In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.").

The Supreme Court has recognized three circumstances in which a private person may nonetheless be treated as a state actor.

> [A] private entity can qualify as a state actor in a few limited circumstances – including, for example, (i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity.

*Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019); *see Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (private entity can be state actor "(1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity has been delegated a public function by the state ('the public function test').").

A private person who files a police report or acts as a complaining witness, even if the information she provides is false, does not act jointly with the police and is not a state actor. *See, e.g., Bloom v. Town of New Windsor Police Dep't*, 234 F.3d 1261, 1261 (2d Cir. 2000); *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999); *Fiore v. Rivera*, No. 14-CV-3570, 2015 WL 5007938, at *4 (E.D.N.Y. Aug. 20, 2015); *Posr v. City of N.Y.*, No. 15-CV-584, 2015 WL 1569179, at *2-3 (E.D.N.Y. Apr. 4, 2015); *Bender v. City of N.Y.*, No. 09-CV-3286, 2011 WL 4344203, at *14 (S.D.N.Y. Sept. 14, 2011).[5]

---

[5] A private citizen can be liable under § 1983 if she conspires with State actors, *see, e.g.*, *Gierlinger v. Town of Brant*, No. 13-CV-370, 2015 WL 269131, at *4 (W.D.N.Y. Jan. 21, 2015), but Plaintiff here does not allege, let alone provide facts plausibly suggesting, that any conspiracy existed here, *see Morris v. New York City*, No. 14-CV-1749, 2014 WL 3897585, at *2 (E.D.N.Y. Aug. 8, 2014).

Accordingly, Plaintiff's abuse of process claim is dismissed.[6]

**B.      Malicious Prosecution**

Plaintiff's malicious prosecution claims against the Town are hard to disentangle.  The

first seems be against the Town, POs #1-#4, and SPO #1, and seems to allege that they are liable

for malicious prosecution for failing to train officers regarding probable cause.  (AC ¶¶ 30-38.)

The second seems to be against the Town only and seems to allege that it is liable for malicious

prosecution for failing to train officers regarding the need for probable cause to justify an arrest.

(*Id.* ¶¶ 39-48.)  The third seems to be against the Town only and seems to allege that it is liable

for malicious prosecution for failing to train officers regarding the handling of exculpatory

material.  (*Id.* ¶¶ 49-61.)

**1.      Doe Defendants**

Plaintiff brings a malicious prosecution claim against POs #1-#4 and SPO #1, but has not

identified or served them.  The Town, which he has served, can only be liable for malicious

prosecution by its employees if Plaintiff plausibly alleges malicious prosecution against any such

---

[6] Lori seeks an award of attorney fees under 42 U.S.C. § 1988, which provides, among other things, that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  Although a court may award defendants attorney's fees under § 1988, it should do so only if "the plaintiff's claim was frivolous, unreasonable, or groundless, or the plaintiff continued to litigate after it clearly became so," in order to avoid a "potential chilling effect on section 1983 plaintiffs – who are the chosen instrument of Congress to vindicate a policy of the highest national priority." *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994).  Thus "it is very rare that victorious defendants in civil rights cases will recover attorneys' fees." *Sista v. CDC Isix N. Am., Inc.*, 445 F.3d 161, 178 (2d Cir. 2006); *see Nardoni v. City of N.Y.,* No. 17-CV-2695, 2019 WL 542349, at *7 (S.D.N.Y. Feb. 12, 2019) (Supreme Court "has discouraged the awarding of attorney fees and costs where the defendant is the prevailing party"), *report and recommendation adopted*, 2019 WL 952333 (S.D.N.Y. Feb. 27, 2019).  Plaintiff's § 1983 claim against Lori was groundless, but in my discretion, I decline to award fees.  It is Plaintiff's counsel, not Plaintiff, who should have been aware of the defect in the claim, but § 1988 contains no mechanism for the imposition of fees to be paid by counsel.  *See Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 624 (2d Cir. 1991).

individuals.  *See Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (no municipal liability

for failure to train absent underlying constitutional violation); *Lee v. County of Onondaga*, No.

13-CV-1285, 2016 WL 9441472, at *7 (N.D.N.Y. Aug. 19, 2016) ("It is well-established that

absent an underlying constitutional violation, there can be no claim for municipal liability.").  I

therefore first address whether Plaintiff has plausibly pleaded an underlying claim.

> To plausibly allege a claim under Section 1983 for malicious prosecution, a plaintiff
> must allege the four elements of a malicious prosecution claim under New York
> law and a deprivation of a Fourth Amendment liberty interest.  To state a claim for
> malicious prosecution under New York law, [a plaintiff] must adequately allege:
> (1) the initiation or continuation of a criminal proceeding against plaintiff; (2)
> termination of the proceeding in plaintiff's favor; (3) lack of probable cause for
> commencing the proceeding; and (4) actual malice as a motivation for defendant's
> actions.

*Norton v. Town of Islip*, 97 F. Supp. 3d 241, 262-63 (E.D.N.Y. 2015), *aff'd*, 678 F. App'x 17 (2d

Cir. 2017).  Probable cause, which is assessed in light of the facts known or reasonably believed

by the officers at the initiation of the prosecution, is a complete defense to a Section 1983 claim

for malicious prosecution.  *Keyes v. City of N.Y.*, No. 21-CV-2406, 2023 WL 176956, at *4 (2d

Cir. Jan. 13, 2023).

To establish the first element of malicious prosecution, a plaintiff must show that the

defendant "play[ed] an active role in the prosecution, such as giving advice and encouragement

or importuning the authorities to act."  *Manganiello v. City of N.Y.*, 612 F.3d 149, 163 (2d Cir.

2010).  "In malicious prosecution cases against police officers, plaintiffs have met this first

element by showing that officers brought formal charges and had the person arraigned, or filled

out complaining and corroborating affidavits, or swore to and signed a felony complaint."

*Llerando-Phipps v. City of N.Y.*, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005).  "In addition, a

police officer 'may be held liable for malicious prosecution when he creates false information

likely to influence a jury's decision and forwards that information to prosecutors.'"  *Maldonado*

*v. City of N.Y.*, No. 11-CV-3514, 2014 WL 787814, at *6 (S.D.N.Y. Feb. 26, 2014) (quoting

*Cameron v. City of N.Y.*, 598 F.3d 50, 64 (2d Cir. 2010)).  An officer may also be liable for

malicious prosecution "[w]here an officer causes the prosecution to initiate or continue criminal

charges without disclosing evidence that would negate probable cause."  *Newson v. City of N.Y.*,

No. 16-CV-6773, 2019 WL 3997466, at *9 (E.D.N.Y. Aug. 23, 2019).  A malicious prosecution

claim must be dismissed if the plaintiff fails to allege facts plausibly suggesting that an officer

played an active role in the initiation of the prosecution.  *See, e.g.*, *Isaac v. City of N.Y.*, No. 16-

CV-4729, 2018 WL 5020173, at *6 (E.D.N.Y. Aug. 6, 2018) (officers did not play active role in

initiating prosecution where they were not alleged to have sworn to criminal complaint or

corroborating affidavit, testified before the grand jury or at trial, or otherwise presented

information to or encouraged the prosecutors to pursue plaintiff's prosecution), *report and*

*recommendation adopted*, 2018 WL 4583481 (E.D.N.Y. Sept. 24, 2018); *Ying Li v. City of N.Y.*,

246 F. Supp. 3d 578, 606-07 (E.D.N.Y. 2017) (dismissing claims against officers where plaintiff

failed to provide factual allegations that they played active role in prosecution).

Here Plaintiff has not alleged any facts suggesting that POs #1-#4 or SPO #1 were

involved in the initiation of the prosecution against him,[7] and thus he has failed to plausibly

allege an underlying malicious prosecution claim against any of the individual defendants.  Even

if the Court were to assume that PO #1, who called Plaintiff prior to his arrest, "initiated" the

case against him within the meaning of that term – a leap not supported by the AC – Plaintiff

---

[7] "The tort of malicious prosecution relates to deprivations of liberty pursuant to legal
process – meaning either post-arraignment or as a result of arrest pursuant to warrant."  *Coleman
v. City of N.Y.*, 688 F. App'x 56, 58 n.1 (2d Cir. 2017) (summary order).  Deprivations of liberty
that occur prior to legal process sound in false arrest, not malicious prosecution.  *Id.*; *see Selvam
v. United States*, 570 F. Supp. 3d 29, 42 (E.D.N.Y. 2021) ("[F]alse-arrest claims are directed at
detentions without legal process."), *aff'd*, No. 21-CV-2513, 2022 WL 6589550 (2d Cir. Oct. 11,
2022).

alleges that only POs #2-#4 and SPO #1 expressed disbelief of Lori's version of events.  (AC ¶¶ 21-22, 24-25.)  He does not allege that PO #1 shared their doubt as to Lori's veracity or had any reason to do so.  The law is clear that the officers who pursue a prosecution are entitled to rely on the allegations of the victim unless they have reason to believe they are not true.  *See Williams v. City of N.Y.*, 683 F. App'x 57, 59 (2d Cir. 2017) (summary order) ("the circumstances known to the arresting officers in each of the three arrests did not raise doubts as to [the victim's] veracity such that the officers were unjustified in relying on [the victim's] accusations" as the basis for probable cause); *see Heyliger v. Peters*, 771 F. App'x 96, 97 (2d Cir. 2019) (summary order) ("It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity.")  Neither the fact that the parties were "experiencing marital discord," nor the fact that the police had only Lori's word as evidence of the threat, nor the fact that Plaintiff had maintained his innocence required PO #1 to discredit her. *Kanderskaya v. City of N.Y.*, 590 F. App'x 112, 113-14 (2d Cir. 2015).  To the extent Plaintiff intended to argue that PO #2's and PO #3's statement that "[n]obody believes Lori," and/or SPO #1's statement that he and "other officers" do not believe her, is sufficient to allege disbelief on the part of PO #1, that argument fails.  Such general and conclusory allegations, which provide no basis to infer to whom the speakers were referring, are not sufficient to render it plausible that PO #1, or any officers involved in the prosecution – whoever they may be – doubted the veracity of Plaintiff's allegations.  In short, Plaintiff does not plausibly allege initiation as to any officer, and even if we indulge the possibility that PO #1 took some action that could amount to initiation, Plaintiff has failed to plausibly allege lack of probable cause as to

PO #1.  He thus fails to plead a sufficient underlying violation for which the Town could be

liable.

### 2.     Municipal Liability

In the absence of an underlying violation, the Town cannot be liable.  But even if Plaintiff

had sufficiently alleged malicious prosecution by an officer employed by the Town, his

allegations of municipal liability would fall short.  He alleges malicious prosecution against the

Town and unidentified Clarkstown P.D. officers based on their alleged failure to properly train,

screen, supervise, and discipline employees and police officers with respect to probable cause,

(AC at 6-8), and the handling of exculpatory materials, (*id.* at 8-9).  For the following reasons,

these claims fail.[8]

"Congress did not intend municipalities to be held liable [under § 1983] unless action

pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell v.*

*Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978).  Under *Monell*, to state a claim against a

municipality under § 1983 based on the acts of a public official, "a plaintiff is required to prove:

(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right;

(3) causation; (4) damages; and (5) that an official policy of the municipality caused the

---

[8] Plaintiff asserts two causes of action against the Town for its alleged failure to train officers with respect to probable cause, (AC at 6-8), but acknowledges that these claims "are so interwoven" that they should be addressed simultaneously.  (P's Opp. to Town at 6.)  The third claim – the alleged failure to train regarding exculpatory evidence – fails for the same reasons as the first two, so I will address all three together.  In addition, the third claim fails because Plaintiff does not identify any exculpatory evidence that existed in his case.  The doubting officers' opinions are not evidence, and Plaintiff does not allege, let alone support with facts, that their doubts were based on the existence of exculpatory evidence.  Further, as Defendants note, (ECF No. 39 at 7), to whatever extent the officers' opinions could be considered exculpatory, those opinions were not withheld from him, so any failure to train on the subject could not have caused him injury.

constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*,

436 U.S. at 690-91).  To satisfy the fifth element, a plaintiff may assert:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *15 (S.D.N.Y. Jan. 24, 2013), *aff'd*,

751 F.3d 78 (2d Cir. 2014).  "[M]ere allegations of a municipal custom, a practice of tolerating

official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the

existence of such a custom unless supported by factual details." *Tieman v. City of Newburgh*,

No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015).

Under a failure to train theory of liability, a plaintiff must "identify a specific deficiency

in the [defendant's] training program and establish that that deficiency is closely related to the

ultimate injury, such that it actually caused the constitutional deprivation." *Wray v. City of N.Y.*,

490 F.3d 189, 196 (2d Cir. 2007).  A plaintiff must also allege facts that support an inference

that, in failing to train its employees, the Town "did so with deliberate indifference." *Dumel v.

Westchester County*, No. 19-CV-2161, 2021 WL 738365, at *6 (S.D.N.Y. Feb. 25, 2021).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a

municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty.

Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).  To establish deliberate indifference, a plaintiff

must demonstrate that: (1) "a policymaker knows to a moral certainty that her employees will

confront a given situation"; (2) "the situation either presents the employee with a difficult choice

of the sort that training . . . will make less difficult or that there is a history of employees

19

mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of N.Y.*, 974 F.2d 293, 297-98 (2d Cir. 1992). "[D]emonstration of deliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012). Failure to train is a narrow basis of liability, and "a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985).

A pattern of similar constitutional violations by untrained employees is ordinarily necessary to determine deliberate indifference for purposes of failure to train. *Connick*, 563 U.S. at 62. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard of the consequences of their actions – the deliberate indifference – necessary to trigger municipal liability." *Brown*, 520 U.S. at 407. "Without notice that a course of training is deficient in any particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *See Connick*, 563 U.S. at 62.

In a narrow range of circumstances, a municipality can be found to be deliberately indifferent based on a single constitutional violation where "the unconstitutional consequences of failing to train [are] so patently obvious that a city should be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64; *see City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989). The violation of constitutional rights must be a "highly predictable consequence" of the failure to train. *Id*. The Supreme Court has suggested that the need to train armed officers on the use of deadly force is sufficiently obvious, *see Canton*, 489 U.S. at 390

n.10, but the need to train Assistant District Attorneys on their obligations with respect to exculpatory evidence is not, *see Connick*, 563 U.S. at 68.

Plaintiff's claims against the Town fail for a few reasons.

First, as noted, there can be no *Monell* liability in the absence of an underlying violation.

Second, Plaintiff fails to allege a *Monell* claim against the Town because he has not identified any specific deficiency in the Town's training.  In the AC, Plaintiff merely states that the Town failed to properly train, screen, supervise, and discipline officers, which led them to arrest Plaintiff without probable cause and improperly handle exculpatory material.  (AC ¶¶ 33, 41, 50.)  Where "Plaintiff has merely alleged that the Town failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program, or regarding other instances of police misconduct which could be attributed to a failure to train," courts have dismissed *Monell* claims.  *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012) (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program"); *Pettiford v. City of Yonkers*, No. 14-CV-6271, 2021 WL 2556172, at *8-9 (S.D.N.Y. June 21, 2021) (dismissing *Monell* claim on failure to train theory where the plaintiff failed to identify specific training failures); *Rutherford v. Westchester County*, No. 18-CV-4872, 2020 WL 433841, at *13 (S.D.N.Y. Jan. 28, 2020) (collecting cases).

The allegations here are pure boilerplate.  Plaintiff has not attempted to describe what training was provided, identify procedural manuals or training guides, identify the purported deficiencies of the training, explain how that inadequacy was responsible for the alleged violation, or describe what kind of training could have ameliorated the problem.  *See Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 130 (2d Cir. 2004).  Nor has he provided facts

plausibly suggesting that anyone at the Clarkstown P.D. was conscious of any inadequacy in the training of its officers.  "The mere fact that [Plaintiffs' rights may have been violated], without more, does not show that the City's training program is inadequate. A training program is not inadequate merely because a few of its graduates deviate from what they were taught." *Jenkins v. City of N.Y.*, 478 F.3d 76, 95 (2d Cir. 2007); *see Amnesty Am.*, 361 F.3d at 129 (failure to train liability requires a faulty training program, not mere negligent implementation of a sound program or other, unrelated circumstances).  Plaintiff has provided no facts plausibly suggesting any lapse in training caused his injuries.  He seems to rely on "the conclusory and circular . . . argument that the [Defendants] must have failed to train its employees because Plaintiff's constitutional rights were violated." *Jenkins v. County of Washington*, 126 F. Supp. 3d 255, 276 (N.D.N.Y. 2015), *aff'd*, 697 F. App'x 102 (2d Cir. 2017); *see Alexander v. Town of East Haven*, No. 20-CV-1406, 2023 WL 22493, at *6 (D. Conn. Jan. 3, 2023) ("Plaintiffs are arguing that the Town must have an inadequate training program by the mere fact that the alleged constitutional violations against them occurred.").

Third, were the above two issues not fatal, Plaintiff fails to sufficiently allege deliberate indifference under the single-incident theory described above.[9]  To hold a municipality liable under Section 1983 without proof of a pre-existing pattern of violations, "the unconstitutional consequences of failing to train" must be "patently obvious" and an actual violation of constitutional rights must be a "highly predictable consequence" of the failure to train.  *Connick*, 563 U.S. at 64.  Here, Plaintiff has not only not alleged any particular failure to train, but he has also not alleged that the consequences of the Town's alleged failure to train are patently obvious.

---

[9] Plaintiff makes clear in his opposition brief that he is proceeding solely under the single-incident theory of deliberate indifference.  (P's Opp. to Town at 41.)

Indeed, Plaintiff's theory of liability is far from clear.  He does not allege that the Town does not

train its officers on probable cause or exculpatory evidence at all, but rather seems to allege that

the Town failed to train its officers, in an unspecified way, for the situation in which officers,

who may or may not have been involved in the prosecution of the criminal defendant, develop

opinions about the credibility of a witness based on unspecified information (which could just be

a gut feeling or loyalty to another police officer) and fail to intervene in the prosecution of the

criminal defendant or inform the prosecutors of their opinion.  Plaintiff has failed to allege how a

policymaker would know with moral certainty that its officers would confront this situation or

that a violation of constitutional rights is a highly predictable consequence of the failure to train

for it.  Indeed, Plaintiff has not even sufficiently alleged a malicious prosecution claim against

the officers who pursued his case, instead only alleging that officers with no apparent

involvement in Plaintiff's case offered him their *opinions* on Lori's credibility.  Thus, it cannot

be said that his constitutional rights were violated by the Town's failure to train the officers who

initiated his prosecution.  Without more, this situation is not sufficient to state a failure to train

claim under the single-incident theory, which is reserved for very rare circumstances in which

the municipal employees are left with an "utter lack of an ability to cope with constitutional

situations."  *Connick*, 563 U.S. at 67.

### 3.    Defendant Officers

Plaintiff includes "Officers" as Defendants against whom he is bringing his first

malicious prosecution/failure to train claim.  Plaintiff alleges that the Town, "acting through its

police department, and through Officer(s) as well as POs #1-4 and SPO #1, being aware that

such lack of training, screening, supervision, and discipline leads to improper, illegal, and

unconstitutional conduct, acted with deliberate indifference in failing to establish a program of

effective training, supervision, and discipline."  (AC ¶ 33.)  He thus apparently intended to allege

that the individual officers were also responsible for failure to train.  But he has provided no facts

plausibly suggesting that any of them had any involvement in or responsibility for training other

officers, let alone that any failure on their part resulted in Plaintiff's harm.  *See Quick v.*

*Westchester County*, No. 18-CV-243, 2019 WL 1083784, at *5 (S.D.N.Y. Mar. 7, 2019)

(dismissing claims where plaintiff provided no facts that defendants were responsible for issue,

grossly negligent in supervision of those responsible, or deliberately indifferent to problem);

*Shepherd v. Fisher*, No. 08-CV-9297, 2017 WL 666213, at *33 (S.D.N.Y. Feb. 16, 2017) (no

liability on the part of defendant not responsible for training or supervision of officers who

allegedly violated plaintiff's rights); *Samuels v. Fischer*, 168 F. Supp. 3d 625, 639 (S.D.N.Y.

2016) ("A general allegation that Fischer, Heath, and/or Keyser failed to train subordinates,

however, is insufficient to establish personal involvement, absent some factual connection

between their failure to train and the harm that eventually befell Plaintiff.").  Nor, as discussed

above, has he identified any deficiency in the Town's training or any basis for inferring

deliberate indifference.

> For the foregoing reasons, Plaintiff's malicious prosecution claims are dismissed. !

## IV.    **CONCLUSION**

> For the foregoing reasons, Defendants' motions are GRANTED and all claims are

dismissed.  The claims against the Town of Clarkstown and Lori Adams are dismissed with

prejudice and the claims against the John Does and Jane Does are dismissed without prejudice.

The Clerk of Court is respectfully directed to terminate the pending motions, (ECF Nos. 31, 37),

and close the case.

**SO ORDERED.**

Dated: January 30, 2023
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.